IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

(1) S.R., a minor, by and through her parents and next friends, STEPHANIE KING and STANLEY ROSS, )
)
)
)
)
Plaintiffs, )
)
v. ) Case No. 23-cv-255-JAR
)
(1) TRI-COUNTY INTERLOCAL COOP INDEPENDENT SCHOOL DISTRICT, )
) JURY TRIAL DEMANDED
)
(2) LOGAN SKYLAR SMITH; )
)
Defendants. )

# PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiff, S.R., a minor, by and through her parents and next friends, Stephanie King and Stanley Ross, and their attorneys of record, Tod S. Mercer and Cameron Spradling, based on information and belief, allege and state as follows:

## I. THE PARTIES

1. S.R. is a minor who attended Tri-County Interlocal Coop School for children with special needs in Healdton, Oklahoma during 2021-2022. At all times alleged in this complaint S.R. was 16 years of age, in the 9th grade, and was required to attend school per Oklahoma Statute 70 O.S. § 10-105. At all material times, S.R. was a resident of Carter County, Oklahoma. S.R. is a special needs student and is approximately 98% non-verbal. S.R. has the mental capacity of an eight year old.

1

2. Tri-County Interlocal Coop School a/k/a Tri-County ISD ("Tri-County School District" or the "District") is a public educational institution located in Carter County, Oklahoma, and is an Oklahoma school district organized and existing under the laws of the State of Oklahoma, with its principal office in Carter County, Oklahoma. Tri-County is a cooperative school where local cooperative member schools send their students with disabilities. Tri-County School District receives federal funding and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688. Tri-County School District may be served with process at its principal place of business: Attn: Michelle Taylor, Superintendent, 100 School Street, Fox, Oklahoma 73435.

3. Defendant Logan Skylar Smith ("Smith") was a teacher's assistant at Tri-County School during the 2021-2022 school year. At all relevant times, Smith was a citizen of the State of Oklahoma and a resident of Carter County, Oklahoma. Smith may be served at his place of residence or at any other place he may be properly served.

## II. JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

5. This Court also has subject matter jurisdiction under 28 U.S.C. § 1343, which gives district courts original jurisdiction over any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

6. Pursuant to 28 U.S.C. § 1367, this Court also has subject matter jurisdiction over pendent state law claims regarding the violation of the Oklahoma Constitution, state statutes, and common law torts.

7. Venue is proper in this district, as the Defendants do business in this district, the events giving rise to the claims occurred in this district, and the Defendants reside and/or have their principal place of business in this district.

### III. FACTUAL BACKGROUND

8. The Tri-County School District should provide a safe learning environment for its students. It failed to do so.

9. The Tri-County School District failed to provide its students an environment free of sexual predators. While on school grounds and during school hours, a sexual predator repeatedly preyed on students, even after Tri-County School District was notified of the sexual predator's misconduct.

10. The sexual predator was Tri-County School assistant teacher, Logan Skylar Smith. Smith molested and committed lewd acts, including but not limited to inappropriately touching or feeling the body or private parts of female students while at Tri-County School District, on campus, and during school hours. S.R. was one of Smith's victims.

11. Smith became an assistant teacher at Tri-County during the 2021-2022 school year.

12. S.R. attended Tri-County School in the spring of 2022.

13. On May 4, 2022 at Tri-County School and during school hours, Smith followed S.R. into a school cleaning closet, shut the door behind him and sexually molested S.R. by touching her inappropriately for sexual gratification. Smith knew that S.R. was a special needs student and that she was non-verbal and operating with the mental capacity of an eight year old.

14. Another Tri-County employee caught Smith and S.R. in the cleaning closet together alone with the door closed. Smith admitted to inappropriately touching S.R.

15. The school superintendent Michelle Taylor was notified of the incident and the Healdton Police Department was called.

16. Upon arrival at the school, the Healdton police officer spoke with Michelle Taylor, who explained to him that Smith was found alone in a cleaning closet with the door closed alone with S.R. Michelle Taylor told the officer that no one knew how long they had been in the closet alone together or what Smith had done to S.R.

17. Smith told the officer that he "got caught up in the moment of fun they were having poking each other in the shoulder and stomach area."

18. The Healdton police officer felt like there was more to the story Smith was telling and he called in his Chief of Police Robert Clark.

19. Smith told Chief Clark that he touched Jane Doe for sexual gratification and he got sexual gratification from his actions in the closet.

20. Smith said he shut the door to the closet because he "did not want the fun to end."

21. Smith stated that if he had not been caught, he would have "wanted to do more" to S.R. and he "would have done more" to S.R.

22. Smith said that "more" meant that he would have done sexual acts to S.R.

23. Smith said that he had reached a point where he was "unable to control his thoughts and actions" he had towards S.R.

24. Smith told the officers that he knew that S.R. was only sixteen years old and had a mental capacity of an eight year old.

4

25. Despite these facts, Smith told the police officer and Police Chief that in the future he wanted to have a physical and mental relationship with S.R.

26. Smith told the officers that if more time passed and he continued to work at Tri-County, he would have, in fact, done sexual acts to S.R.

27. Smith touched S.R. inappropriately with intent to obtain sexual gratification and, in fact, did obtain sexual gratification from touching S.R.

28. Tri-County administrator Michelle Taylor had prior knowledge of Smith molesting another special needs student at least two times on campus at Tri-County a few weeks earlier, but the Superintendent Michelle Taylor and Tri-County did nothing to prevent Smith from molesting another student like S.R and allowed him to remain on campus where he could access other innocent victims.

29. A few weeks earlier, another special needs student and classmate of S.R. was sexually molested by Smith on at least two separate occasions. When her parents came to pick her up from school, they witnessed Smith grab their daughter's vagina on top of her clothes. Like S.R. their daughter is mentally disabled and also essentially non-verbal and unable to communicate verbally.

30. The parents of the student immediately reported Smith's actions to the Tri-County superintendent Michelle Taylor.

31. Michelle Taylor told the parents that she "was sure Smith did not intend to touch her sexually" and that "he came from a good family."

32. Michelle Taylor and Tri-County did not open an investigation into the other victim's parent's allegations against Smith.

33. Under Oklahoma law, Michelle Taylor is a mandatory reporter of child abuse. But, Michelle Taylor did not report Smith's prior alleged child abuse to legal authorities or DHS as required by Oklahoma law.

34. Michelle Taylor and Tri-County failed to take any action against Smith after receiving the first report of him molesting a student just a few weeks before he molested S.R.

35. Despite having knowledge of Smith's prior sexual misconduct, the Tri-County School District did not notify law enforcement, the Department of Human Services, the Oklahoma State Department of Education or other parents until May 4, 2022 - when Smith molested S.R. and he was finally escorted off campus and not allowed to return.

36. Because of the Tri-County School District's lack of response to Smith's prior sexual misconduct, the Tri-County School District allowed Smith to remain on campus and be a threat to other students, like S.R.

37. Tri-County School District also facilitated Smith's access to young girls during school. For example, in his role as assistant teacher, he was allowed to be in contact with young girls on a daily basis, many times while not in the presence of other adults. No one at Tri-County was monitoring Smith.

38. Tri-County put Smith in situations where he was unsupervised and he could take advantage of special needs non-verbal young girls who were unable to report his inappropriate actions, making it difficult for the school or anyone else to know how many more victims Smith has and what he may have done to them.

39. Following the events on May 4, 2022, the Healdton Police Department launched an investigation into Smith's misconduct. Smith was subsequently arrested and charged with Sexual

Battery. Because S.R. is non-verbal she was unable to specifically describe the Smith's actions. The criminal charges against Smith were later dismissed at Preliminary Hearing.

40. The Tri-County School District failed to implement and/or execute policies in regard to the reporting of sexual misconduct to state agencies to protect students from further abuse and to end the access to students of suspected predators. These failures resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

41. The Tri-County School District failed to ensure that all of its employees, including administrators, were properly hired, trained, retained, and supervised to perform their jobs.

42. The Tri-County School District is responsible for the acts and omissions of its employees, including its administrators, during the course and scope of their employment.

43. At all relevant times described, Michelle Taylor was acting in the course and scope of her employment as a Tri-County School District Superintendent, including when she interacted with student-victims, faculty, parents and/or police.

44. The Tri-County School District is responsible for the acts and omissions of Michelle Taylor and any other school district employees who had knowledge of Smith's activities as described herein.

45. The Tri-County School District is also responsible for the acts and omissions of Michelle Taylor, with respect to her failure, as a Tri-County Superintendent, to properly train school employees and implement and/or execute policies regarding the investigating and reporting of sexual misconduct.

46. Tri-County should provide a safe learning environment for its students, free from sexual predators.

47. Tri-County failed to provide a safe learning environment for S.R.

48. S.R. was physically, mentally, and emotionally injured by Smith's misconduct and the Tri-County School District's failure to adequately respond to Smith's inappropriate misconduct.

## IV. CAUSES OF ACTION

### Count 1 – Violations of 42 U.S.C. § 1983
### (Against Tri-County School District)

49. Under the Fifth and Fourteenth Amendments, S.R. has the right to Due Process and Equal Protection of the Law.

50. At all times relevant hereto, it was clearly established that S.R. had fundamental rights to physical safety and to be free from the infliction of unnecessary pain.

51. At all times relevant hereto, Defendant Tri-County School District was a state actor, acting under the color of state law.

52. Defendant Tri-County School District denied S.R. her rights to Due Process and Equal Protection of the Law by:

    a. enacting inadequate policies, specifically regarding the reporting of suspected sexual misconduct to law enforcement;

    b. failing to enact and implement adequate policies concerning sexual abuse of students by adults on campus;

    c. failing to remove suspected sexual predators from campus;

    d. failing to remove students from classrooms or offices occupied by suspected sexual predators;

    e. failing to investigate Smith properly before and after these referenced allegations;

    f. failing to train and supervise Smith properly;

g.  failing to hire, train, and supervise Michelle Taylor and other teachers and/or administrators properly;

h.  failing to report sexual misconduct to law enforcement;

i.  failing to report sexual misconduct to parents of students;

j.  failing to investigate Smith's misconduct;

k.  continuing to employ Smith and allow him unfettered, unsupervised interaction with special needs students, some of which were non-verbal and unable to report his misconduct;

l.  failing to adequately train and supervise the Tri-County School District's staff and employees;

m.  failing to enact policies and procedures designed to protect special needs students with disabilities, including non-verbal students that are unable to report sexual assaults; and

n.  exhibiting deliberate indifference to the sexual misconduct directed at S.R. and others like her.

53. Tri-County School District has an unconstitutional custom or policy of:

   a.  failing to properly investigate criminal misconduct against students;

   b.  failing to report criminal misconduct against students;

   c.  discounting the credibility of students' and parents' allegations;

   d.  failing to adequately train and supervise employees with regard to the investigation and reporting of sexual abuse of students;

   e.  failing to enact policies and procedures for the safety and protection of special needs students; and

      f.    failing to enact policies that require adherence to reporting requirements.

54. Tri-County School District's custom or policy was demonstrated by the fact that Defendant received credible eye-witness allegations of sexual misconduct regarding Smith from adult parents who witnessed their own daughter being molested by Smith, yet Tri-County failed to investigate those allegations, suspend Smith, or report the incidents to law enforcement as required by law.

55. Tri-County removed Smith only after a staff member personally observed Smith and S.R. alone together in a cleaning room with the door closed.

56. Defendant's policy is attributable to municipal policymakers including, but not limited to, Superintendent Michelle Taylor and the Tri-County Board of Education.

57. The inadequate policies and resulting failures to train, allowed Smith, as a Tri-County School District employee, to violate S.R.'s constitutional rights to equal protection and due process.

58. Further, Tri-County affirmatively acted to create, or increase S.R.'s exposure and/or vulnerability to, or danger from, Smith's misconduct.

59. Sexual molestation of students at a high school and during school hours is a danger to those students.

60. A school environment where special needs children are inappropriately touched for sexual gratification and/or receive lewd or lascivious communications from adults is a dangerous environment.

61. Tri-County School District was a dangerous environment for its students, including S.R.

62. Tri-County School and activities sponsored by and under the supervision and control of Tri-County School were dangerous environments for its students, including S.R.

63. S.R. was a member of a limited and specifically definable group, namely, female, minor students with special needs that are essentially non-verbal and unable to communicate they are being subjected to sexual molestation or inappropriate contact.

64. Tri-County School District created the danger or increased S.R.'s vulnerability to the danger by effectively ignoring credible eye witness allegations of sexual misconduct by Smith from other parents who witnessed Smith grab their daughter's vagina on two prior occasions; not immediately removing Smith from campus after receiving notice of his misconduct; continuing to allow Smith unfettered and unsupervised access to students; not effectively investigating allegations of misconduct by Smith; and/or not immediately reporting the allegations of misconduct to law enforcement, DHS and/or the students' parents.

65. Tri-County School District's conduct put S.R., and others like her, at substantial risk of serious, immediate, and proximate harm. That risk included the risk of being sexually abused while at Tri-County School and during school activities.

66. Indeed, S.R., and possibly other students, were abused by Smith *after* Tri-County School District had notice of Smith's prior sexual misconduct by the parents of S.R. classmate who was also a victim of Smith.

67. The risk of danger was obvious and known to Tri-County School District, including the Superintendent, due to disclosure of Smith's prior sexual misconduct to Superintendent Michelle Taylor.

68. Tri-County School District's actions and inactions created an opportunity for Smith to continue to abuse students, including S.R., and possibly other students, as those actions stripped

11

necessary aid from S.R. and others. Reporting Smith's misconduct to law enforcement and/or victims' parents could have enabled law enforcement, regulatory bodies like DHS or the OSDE, or parents to have sheltered S.R. and other students from Smith's predatory behavior, including by removing Smith from Tri-County School District, removing S.R. and/or other students from Tri-County School District, or otherwise preventing Smith from further access to Tri-County students including S.R.

69. Tri-County School District acted recklessly in conscious disregard of this risk.

70. Tri-County School District's conduct shocks the conscience.

71. Tri-County School District's and its officials' failings as described above resulted in S.R. and other students suffering severe emotional distress, psychological damage, significant pain and suffering, and/or personal humiliation.

### Count 2 – Violations of Title IX
### (Against Tri-County School District)

72. Tri-County School District receives federal financial assistance.

73. Defendant's disregard of the sexual misconduct of Smith was so severe and objectively offensive that it deprived S.R. of education opportunities and benefits provided by her public schooling.

74. Defendant created and/or subjected S.R. to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (Title IX), because:

    a. S.R. was a member of a protected class;

    b. S.R. was subjected to sexual harassment in the form of sexual pursuit and sexual misconduct by an employee on campus of the Tri-County School District; and

12

c. S.R. was subjected to harassment based on her sex and disabilities.

75. S.R. suffered sexual harassment and/or abuse; therefore, the discrimination was on the basis of sex. In addition, the discrimination was on the basis of sex because only females endured the abuse. No male students were subjected to the abuses suffered by S.R. or the other female victim(s).

76. S.R. was subjected to a hostile educational environment created by the Defendant's lack of policies and procedures and failure to properly investigate and/or report sexual misconduct.

77. Defendant and its officials had knowledge, including actual knowledge, of the sexual misconduct S.R. suffered as a result of Defendant's failure to notify law enforcement of Smith's prior sexual misconduct.

78. Teachers, principals, and administrators are appropriate persons to receive complaints for purposes of a Title IX claim.

79. Further, Michelle Taylor was the appropriate person to receive complaints of sexual misconduct at the Tri-County School District, as she exercised control over Smith and/or Tri-County School, where Smith's misconduct occurred.

80. Smith's sexual misconduct was a substantial danger and risk to the Tri-County School District's students, including S.R.

81. Tri-County had credible eye witness evidence of two incidents of Smith grabbing another non-verbal special needs classmate of S.R. by her vagina by that student's own parents, who witnessed Smith grab their daughter's private parts.

82. When the classmate's parents complained to Michelle Taylor, she was deliberately indifferent to their eyewitness account of Logan Smith grabbing their daughter's vagina and she

responded to them saying that "it must have been a misunderstanding" and that Logan Smith "came from a good family."

83. The harassment suffered by S.R. was severe, pervasive, and objectively offensive.

84. Tri-County School District Board of Education had sufficient control over Logan Smith and Tri-County School to confer the ability to remedy Smith's misconduct and protect the special needs children.

85. Tri-County acted with deliberate indifference by failing to properly investigate allegations of Smith's misconduct, failing to take action to protect other students, and to inform law enforcement or DHS as required by law. Defendant's inactions were clearly unreasonable in light of the known circumstances.

86. The District's actions and inactions caused students, including S.R., to undergo further sexual misconduct by Smith and made them vulnerable to his sexual misconduct.

87. The District persisted in its actions and inactions even after it had actual knowledge of Smith's sexual misconduct.

88. The District's failure to promptly and appropriately respond to the alleged sexual harassment and sexual misconduct resulted in S.R., on the basis of her sex, being excluded from participation in, being denied the benefit of, and/or being subjected to discrimination in the District's education program in violation of Title IX.

89. Plaintiff and other girls, similarly situated, did not receive an equal education as the boys because they were subjected to sexual harassment, sexual abuse, and/or inappropriate sexual mis-conduct by Logan Smith.

90. The District failed to take immediate, effective remedial or preventative steps to resolve, investigate, or prevent further sexual assaults. Instead, the District acted with deliberate indifference toward S.R. and other female students.

91. The District's response was clearly unreasonable in light of the circumstances known to them.

92. The District's actions, including but not limited to its failure to effectively and immediately investigate Smith's misconduct and to continue to allow Smith unfettered and unsupervised access to children, were not reasonable responses to the substantial risk of sexual misconduct.

93. The District dismissed the prior allegations of Smith's sexual misconduct.

94. In response to allegations of Smith's sexual misconduct, the District did not conduct a legitimate investigation.

95. The District could have exercised its inherent authority over school property to immediately prohibit Smith from entering school property and abusing S.R. and other students. It did not.

96. The District engaged in a pattern and practice of behavior that failed to fully investigate, alert, and protect students from sexual misconduct within the school district.

97. The District's actions were the direct and proximate cause of S.R. being deprived of a safe and harassment-free educational environment.

98. As a result of the Tri-County School District's actions and inactions, S.R. has suffered and continues to suffer severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

## Count 3 – Negligence *Per Se*
### (Against Tri-County School District)

99. The District and its employees and/or agents had a duty to report allegations of Smith's sexual misconduct to the Oklahoma Department of Human Services ("DHS"). *See* 10A O.S. § 1-2-101(B)(1).

100. That subsection requires "[e]very person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter promptly to the Department of Human Services."

101. The Oklahoma Legislature promulgated the reporting requirements to prevent the type of injuries inflicted upon S.R.

102. The Oklahoma Legislature stated this legislative purpose in 10A § 1-1-102(A)(3): "Because the state has an interest in its present and future citizens as well as a duty to protect those who, because of age, are unable to protect themselves, it is the policy of this state to provide for the protection of children who have been abused or neglected and who may be further threatened by the conduct of persons responsible for the health, safety, and welfare of such children."

103. Oklahoma's child abuse reporting laws express the State's strong public interest in protecting children from abuse by the policy of mandatory reporting of actual and suspected child abuse or neglect to appropriate authorities and agencies.

104. The District failed to report Smith to the DHS, even though the District had information regarding Smith's misconduct that required reporting.

105. The failure to report by the District was the direct and proximate cause of the abuse of S.R., thereby causing S.R. mental anguish and physical injury.

106. The District's failures to abide by its statutory duties is negligence *per se*.

### Count 4 – Assault and Battery
### (Against Logan Smith)

107. Smith acted intentionally with the intent of making unwanted harmful contact with S.R.

108. Smith acted without the consent of S.R.

109. Smith's actions resulted in harmful contact with S.R.

110. Smith's actions constitute assault and battery.

111. As a direct result of the assault and battery, S.R. has suffered injuries and damages.

112. The actions of Smith were reckless and in disregard for the rights of others, including the rights of S.R.

### Count 5 – Intentional Infliction of Emotional Distress
### (Against Logan Smith)

113. The physical and mental abuse that Smith inflicted on S.R. was done maliciously and sadistically.

114. Smith's actions were extreme and outrageous and beyond the bounds of decency.

115. Smith's actions were atrocious and utterly intolerable in a civilized society.

116. As a direct result of Smith's actions, S.R. was severely traumatized, beyond which a reasonable young girl would be expected to endure.

117. Smith intentionally and/or recklessly caused S.R. emotional distress.

118. Smith's actions were intentional and/or reckless, with disregard for the rights of others, including the rights of S.R.

### V.   PRAYER

119. Plaintiff respectfully requests judgment in her favor and against Defendants, Tri-County Interlocal Coop School District a/k/a Tri-County ISD and Logan Skylar Smith, as follows:

a. compensatory damages, including S.R.'s physical damages as well as for her psychological and emotional distress;

b. punitive damages;

c. injunctive relief;

d. all other damages or relief deemed appropriate by the Court or jury;

e. costs;

f. reasonable attorneys' fees; and

g. any further relief this Court deems just and equitable.

Respectfully submitted,

/s/ Tod S. Mercer

TOD S. MERCER
Oklahoma Bar Association No. 14157
MERCER LAW FIRM
500 East Choctaw Avenue
McAlester, OK 74501
(918) 420-5850 Phone
(918) 420-5855 Fax
Tod@TodMercerLaw.com

AND

CAMERON SPRADLING
Oklahoma Bar Association No. 8509
500 N. Walker Ave, Suite 100
Oklahoma City, OK 73102
Telephone: 405.605.0610
Facsimile: 405.605.0615
Cameron@CameronSpradling.com

**ATTORNEYS FOR PLAINTIFFS**