# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

S.R., a minor, by and through her )
parents and next friends STEPHANIE )
KING and STANLEY ROSS, )
                    )
                Plaintiffs, )
                    )
v.                          )
                    )    Case No. 6:23-cv-255-JAR
TRI-COUNTY INTERLOCAL CO-OP )
INDEPENDENT SCHOOL DISTRICT, )
                    )
                Defendant. )

### OPINION AND ORDER

Before the court is the motion for summary judgment filed on behalf of Tri-County Interlocal Co-Op Independent School District ("Tri-County") pursuant to Fed. R. Civ. P. 56(a). [Doc. 68].[1] Plaintiffs Stephanie King and Stanley Ross initiated this action on August 1, 2023 on behalf of S.R., their minor daughter, based on allegations that Tri-County and Logan Smith[2] violated S.R.'s rights under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681 *et seq*., the Fifth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983"), and Oklahoma law. Plaintiffs timely responded in opposition to Tri-County's motion [Doc. 73 (SEALED)][3] and Tri-County filed a reply brief [Doc. 79].

---

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination and document numbers assigned by CM/ECF.

[2] Plaintiffs voluntarily dismissed Mr. Smith as a defendant to this action, with prejudice, in late-December of 2024. [Doc. 74; Doc. 82].

[3] On January 2, 2025, the court granted plaintiffs' request to seal their response brief. [Doc. 76; Doc. 78].

## I.  SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories, and admission on filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Inferences supported by conjecture or speculation will not defeat a motion for summary judgment." Self v. Crum, 439 F.3d 1227, 1236 (10th Cir. 2006). However, "at the summary judgment stage the judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. At this stage, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the non-moving party." Schaffer v. Salt Lake City Corp., 814 F.3d 1151, 1155 (10th Cir. 2016) (citation omitted).

## II.  UNDISPUTED MATERIAL FACTS [4]

Located in Healdton, Oklahoma, Tri-County was established through an interlocal cooperative agreement among seventeen school districts to serve as a co-op program that provides specialized educational services to students with disabilities from its member districts. [Doc. 68 at 2, ¶ 1; Doc. 73 at 7-8, ¶¶ 1-3 & 14, ¶ 1; Doc. 79 at 2-3, ¶¶ 1-2]. The co-op program is governed by a board of education comprised of superintendents from each participating district. [Doc. 73 at 7, ¶ 1 & 8, ¶ 3; Doc. 79 at 2-3, ¶¶ 1-2]. The appointed executive director serves as the executive officer, or superintendent, of Tri-County. At all times relevant to this action, Michelle Taylor served as the Executive Director of Tri-County. [Doc. 73-1 at 22, 25]. The co-op program explicitly accepts students from member school districts who function below the IQ level of fifty-five. [Doc. 68-1 at 6]. The Tri-County school building consists of three classrooms—one for elementary students, one for middle school students, and one for high school students. Twenty-five students were enrolled during the 2021-2022 school year and, after Logan Smith was hired as a paraprofessional in March of 2021, Tri-County had eight employees. [Doc. 73 at 11, ¶ 11; Doc. 79 at 3, ¶ 6].

S.R., who was enrolled as a Tri-County student from September 2015 through May 2022, has chromosomal translocations and meets criteria for autism spectrum disorder. As a primarily non-verbal sixteen-year-old operating with the mental capacity of an eight-year-old, S.R. was classified as a ninth-grade student for the 2021-2022 school year. [Doc. 68 at 2-3, ¶¶ 5-7; Doc. 73 at 15, ¶¶ 5-7]. S.R. can speak

---

[4] Unless otherwise noted, the following facts are undisputed for summary judgment purposes.

approximately 100 words, knows some sign language, and uses an electronic device to help her communicate. [Doc. 68 at 3, ¶ 8; Doc. 73 at 15, ¶ 8].

On May 4, 2022, paraprofessional Chasity Webb observed Logan Smith and S.R. playing the "booping" game. This was a practice common to S.R. where she would "boop" or poke another person, usually on the shoulder or upper arm, and expect a poke in return. [Doc. 68-5 at 1-2]. Ms. Webb noticed, however, that Mr. Smith was playing the game "different[ly]" by "poking [S.R.] in the side and stomach area instead of the arm." [Doc. 73-4 at 13 (47:4-21)]. Later that day at approximately 1:30 p.m., Ms. Webb heard a small crash emanate from a nearby janitor's closet followed by giggling from a student. [Doc. 68-6].[5] Ms. Webb investigated the noise and witnessed the following:

> I peaked [sic] into the closet and I saw [S.R.] on the floor in front of the sink and Logan was behind her bent over. I couldn't tell if his arms were under her armpits or wrapped around her. My first thought was maybe she fell and he was trying to help her. Then I saw Logan reach over with his right hand and shut the door. I was in total shock. Then I heard a noise like the doorknob jiggling as if he were trying to lock the door. Still in total shock, I went to the door and slightly turn[ed] the knob to see if it was locked. It was not locked so I swung the door open and said "[S.R.], what are you doing in here girl?" She got up and came out and sat in the hall with me. Logan had a deer in the headlight look. He walked down the hall. [S.R.'s] hair was all falling down and just a mess. She had a lanyard around her neck that was askew. She pointed to her knees telling me she was dirty. She wiped herself off and walked down the hallway to our classroom. After she entered our classroom, Logan followed behind her.

[*Id*.]. Ms. Webb followed Mr. Smith and S.R. into the classroom and texted another paraprofessional, Sandra Hodges, asking her to "come here." [*Id*.; Doc. 73-4 at 25

---

[5] As part of a school-to-work program through Oklahoma's Department of Rehabilitation, S.R. regularly performed janitorial work at Tri-County. [Doc. 68 at 3, ¶ 10; Doc. 73 at 15, ¶ 10].

(77:1-8)]. Ms. Hodges and another co-worker, Payton Keithley, soon located Ms. Webb and were informed of the incident. Mr. Keithley suggested that Ms. Webb also apprise his mother and fellow Tri-County teacher, Kristina Keithley, of the events witnessed. Ms. Webb did so and then informed S.R.'s teacher, Heather Wilson, of the incident. [Doc. 68-6]. Ms. Wilson, who happens to be the mother of Logan Smith, spoke privately with her son about the allegations before ushering him to the office of Tri-County's Executive Director, Michelle Taylor. [Doc. 73-3 at 5 (25:14-25); Doc. 73- 9 at 3 (21:1-10)]. After discussing the allegations privately, Director Taylor reported the incident to local law enforcement. [Doc. 68 at 4, ¶ 19; Doc. 73 at 17, ¶ 19].

At approximately 3:00 p.m. on May 4, 2022, officers from the Healdton Police Department arrived at Tri-County to investigate the reported teacher-on-student incident. [Doc. 68-8]. The officers who conducted and recorded voluntary post-Miranda interviews of Mr. Smith reported the following:

> He said he was playing with [S.R.], tickling, and I could see that he had more on his mind. I asked why they went to the closet, and I was told that she was playing and running away, and she went into the closet. I asked if he closed the door and he said he did. I asked why. He said that he did not want the fun to end. ... I asked him a few more questions and he stated that he is very lonely and hoped for a further relationship with [S.R.] and he did admit that he may not have been able to control himself if [S.R.] touched him in a non-playing way or if another teacher had not opened the door. … [H]e stated that he hoped things would go further and intentionally sh[u]t the door so nobody could see what was going on. He admitted to [S.R.] lowering herself to the floor and he was still tickling her [o]n the floor.

[*Id*.].

> [W]e asked what would have happened if he would not have [been] caught, Smith stated that he would [have] done more and would have wanted to do more to [S.R.]. He spoke of possibly trying [to] have a physical and mental relationship with [S.R.] knowing that she is just

> sixteen years old but has a mental disability that puts her operating at around eight-year old's mindset. Smith stated if even more time have passed that he worked at the school he would in fact have done more sexual acts to [S.R.] if given the opportunity[.][6]

[Doc. 73-11 at 2]. With the help of her mother, S.R. indicated to law enforcement that Mr. Smith had not touched her in any private areas. [Doc. 68-8].[7] S.R. was able to communicate, however, that "what happened at the school was not okay with her" and that Mr. Smith tickled her "from her hips all the way up around the side of [her] breast." [Doc. 73-11 at 4, 6].

The interviewing officers escorted Mr. Smith off the school premises following the conclusion of his post-Miranda interviews and informed him that returning to school property would result in an arrest. [*Id*. at 4]. According to Director Taylor, she accepted Mr. Smith's verbal resignation as a Tri-County paraprofessional that same day. [Doc. 68-7]. Director Taylor sent an email to the Oklahoma State Department of Education the following day, notifying them of the incident. [*Id*.]. Though S.R. finished the 2022 school year at Tri-County, her parents thereafter transferred her to another school. [Doc. 68 at 5, ¶ 35; Doc. 73 at 20, ¶ 35].

On June 21, 2022, Logan Smith was criminally charged with felony sexual battery in violation of *Okla. Stat*. tit. 21, § 1123(b)(3). [Doc. 68-9]. The case was dismissed in January of 2023 based on insufficient evidence. The Carter County court expressed its dismissal ruling as follows:

---

[6] On May 4, 2022, Logan Smith was twenty-five years of age. [Doc. 68-5 at 1].

[7] The record suggests that Director Taylor contacted S.R.'s mother sometime after notifying law enforcement of the incident, as S.R. had arrived home from school when Director Taylor asked Ms. King to bring her back to Tri-County. [Doc. 73-10 at 3 (79:2-24); Doc. 73-11 at 5].

The only controverted issues at the preliminary hearing were 1) whether the Defendant's statements were voluntary; and 2) whether the touching of S.R. was in a lewd and lascivious manner. The Defendant's argument that [his] statements were not voluntary are not properly before the Court. … More importantly, the best evidence of the confession is the recording itself, which was not admitted or presented to the Court for review. This evidence would be vital to determine the totality of the circumstances of the interrogation and the voluntariness of any statements made by the Defendant.

[Doc. 68-5 at 3-4].[8]

### A.    TRI-COUNTY POLICIES AND PROCEDURES

While Tri-County had a "Sexual Harassment" policy in existence prior to the events giving rise to this action, the policy contemplated only employee-on-employee harassment. [Doc. 73-2 at 10 (71:18-21), 11 (72:3-25); *Id*. at 15]. The record indicates that Tri-County did not adopt its own "Sexual Harassment of Students" policy until April of 2024. [Doc. 73-3 at 19-20 (135:19-136:10); *Id*. at 26-31].[9]

### B.    RELEVANT ALLEGED EVENTS OCCURRING PRIOR TO MAY 4, 2022

Bonnie Fowler, a mother of a Tri-County student, informed Director Taylor in March of 2022 that her husband witnessed Mr. Smith grab their daughter's "crotch" while securing her in a car seat during after-school pickup. [Doc. 73-3 at 33; Doc. 73-1 at 5 (22:4-9) ("[Ms. Fowler] called later that day and said that her husband had said that Logan had poked his finger in her daughter's vagina when loading[.]")]. Director

---

[8] In this action, plaintiffs' counsel obtained the footage of Mr. Smith's post-Miranda interviews and utilized such footage during Mr. Smith's deposition. [Doc. 65; Doc. 65-1; Doc. 73-3 at 25].

[9] Tri-County has submitted a copy of a "Sexual Harassment of Students" policy maintained by the Healdton Board of Education in an effort to establish the co-op program had such a policy in place prior to the events giving rise to this action. *See* [Doc. 68 at 2, ¶ 4 (*citing* Doc. 68-3 at 6-10)]. However, Tri-County offers no independent evidence demonstrating that this policy was formally adopted, implemented, or recognized as governing within its own program. A policy maintained by a separate school district, without corroborating proof of adoption or applicability, does not constitute competent evidence that could show Tri-County had such a policy in effect at the relevant time.

Taylor unilaterally dismissed this accusation because she "was standing right there" at the time and "saw nothing inappropriate[.]" [Doc. 73-1 at 5 (22:4-23)]. Based on her deposition testimony, Director Taylor believes the requirements of mandatory reporting can be epitomized by the motto: "If you see something, say something." [*Id.* at 6 (25:13-16)]. She consequently believed herself to be under no obligation to report the Fowlers' complaint to the Oklahoma Department of Human Services ("DHS") or to local law enforcement. [*Id.* at 6-7 (25:19-26:1)]. A few months later, Ms. Fowler submitted a voluntary statement to the Healdton Police Department summarizing her husband's account of Mr. Smith's alleged molestation of their daughter and noting Tri-County's failure to report the same. [Doc. 73-3 at 33].[10]

## C. PROCEDURAL BACKGROUND

As noted, plaintiffs filed a complaint in this court on August 1, 2023. Pursuant to their recent dismissal of Mr. Smith as a defendant to this action, plaintiffs' remaining causes of action are as follows: a § 1983 municipal liability claim based on allegations that Tri-County violated S.R.'s substantive due process and equal protection rights by (a) failing to enact adequate policies concerning sexual abuse of students by school employees, (b) failing to train and supervise school employees with regard to the investigation and reporting of sexual abuse of students, and (c)

---

[10] Tri-County contends that plaintiffs' reliance on Ms. Fowler's voluntary statement is improper because it constitutes inadmissible hearsay. [Doc. 79 at 4, ¶ 10]. By definition, hearsay is an out-of-court statement offered to prove the truth of the matter asserted. <u>Fed. R. Evid. 801(c)</u>. Plaintiffs have not introduced this evidence for its truth—namely, that "Logan Smith grabbed . . . Mackynzie Fowler by the crotch as he was putting her in her car seat." [Doc. 73-3 at 33]. Instead, they offer the statement to demonstrate that Director Taylor failed to report a prior, similar sexual harassment complaint against Mr. Smith. Even if this evidence constituted inadmissible hearsay, Director Taylor has conceded that she chose not to report or open an investigation into the Fowlers' complaint because she "d[id] not believe that there was any sexual thing going on[.]" [Doc. 73-1 at 6-8 (25:4-27:25)].

exhibiting deliberate indifference to the sexual misconducted directed at female students, including S.R. (Count I); a Title IX claim based on allegations that Tri-County created and/or subjected S.R. to a hostile educational environment (Count II); and a negligence per se claim based on allegations that Tri-County and its employees violated the Oklahoma Reporting Act, *Okla. Stat*. tit. 10A, § 1-2-101 *et seq*., by failing to report a sexual harassment complaint against Mr. Smith to DHS (Count III).

In support of its request for summary judgment, Tri-County argues that (1) S.R. was not subjected to sexual harassment or abuse; (2) Tri-County was not deliberately indifferent in its response to Mr. Smith's alleged sexual harassment or abuse of S.R.; (3) plaintiffs cannot make a *prima facie* case for violations of S.R.'s substantive due process and equal protections rights; (4) plaintiffs' negligence per se claim fails as a matter of law; and (5) pursuant to plaintiffs' failure to respond to Tri-County's arguments regarding the negligence per se claim, they waived any argument opposing summary judgment on said claim.

### III.  COUNT I | ALLEGED § 1983 VIOLATIONS

When a § 1983 claim is asserted against a municipality, such as Tri-County, a plaintiff must allege facts showing: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." Myers v. Okla. Cty. Bd. of Cty. Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998) (*citing* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). A municipality is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible[.]" Monell, 436 U.S. at 691. Importantly, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. In this section, the court first considers whether plaintiffs have established a policy or custom that was the moving force behind the constitutional deprivations alleged, and then turns to whether plaintiffs have demonstrated any underlying constitutional violations.

## A.  MUNICIPAL POLICY OR CUSTOM

A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; and (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010) (alterations in original) (citation omitted). Only the second and fifth theories of liability are at issue.

### 1.  Custom of Inaction

Plaintiffs claim that Tri-County's § 1983 liability arises from a "custom of inaction" evidenced by Director Taylor's failure to take remedial action against Logan Smith in response to a prior report of similar misconduct. [Doc. 73 at 22-23]. *See* Lankford v. City of Hobart, 73 F.3d 283, 286 (10th Cir. 1996) ("If the violation cannot be characterized as official policy, then [the municipal defendant] can still be held

liable if the practice is 'so permanent and well settled as to constitute a custom or usage with the force of law.'") (*quoting* <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 168 (1970)). To establish § 1983 liability on the basis of a custom, the challenged conduct must be a "persistent and widespread" practice at Tri-County *See* <u>Monell</u>, 436 U.S. at 691. "In attempting to prove the existence of such a continuing, persistent and widespread custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." <u>Carney v. City & Cty. of Denver</u>, 534 F.3d 1269, 1274 (10th Cir. 2008).

Although the Tenth Circuit has never adopted a bright-line rule as to the number of similar incidents required to establish the existence of a custom, most courts, including the Tenth Circuit, have concluded that a single incident—or even three incidents—do not suffice.[11] In this case, plaintiffs offer evidence of a single similar instance of alleged employee-on-student sexual harassment. The law is clear that a single incident does not suffice to establish a persistent and widespread pattern of misconduct. Therefore, plaintiffs' "custom of inaction" theory of § 1983 liability fails as a matter of law.

### 2. Failure to Train

Plaintiffs also claim that Tri-County's § 1983 liability arises from a failure to adequately train school employees on how to identify and address signs of child abuse.

---

[11] *See* <u>Williams v. City of Tulsa</u>, 627 Fed. Appx. 700, 704 (10th Cir. 2015); <u>Wilson v. Cook Cty.</u>, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice."); <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1076 (8th Cir. 1996) (two instances of misconduct were insufficient to indicate a "persistent and widespread" pattern of misconduct).

[Doc. 73 at 21]. To sustain a municipal liability claim on a failure to train theory, plaintiffs must prove "(1) the existence of a county policy or custom involving deficient training; (2) the policy or custom's causation of an injury; and (3) the city's adoption of a policy or custom with deliberate indifference." Waller v. City & Cty. of Denver, 932 F.3d 1277, 1283-84 (10th Cir. 2019). It is not enough for plaintiffs to show there were general deficiencies in Tri-County's sexual harassment training program. Plaintiffs must identify the specific deficiency in Tri-County's training program closely related to S.R.'s ultimate injury and must prove that the deficiency in training caused school employees to act with deliberate indifference to S.R.'s safety. See City of Canton, Ohio v. Harris ("Canton"), 489 U.S. 378, 391 (1989).

The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chose to disregard the risk of harm. See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown ("Brown"), 520 U.S. 397, 407-08 (1997). In most instances, notice can be established by proving the existence of a pattern of tortious conduct. Id. In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations. Id.; Canton, 489 U.S. at 390 & n.10.

In the present case, the incident involving Kynzie Fowler is the only prior instance of misconduct cited in support of plaintiffs' failure to train allegations against Tri-County. *See* George v. Beaver Cty., 32 F.4th 1246, 1253 (10th Cir. 2022) ("Ordinarily, a plaintiff must prove a *pattern* of untrained employees' constitutional violations to show deliberate indifference.") (emphasis added). As for the "narrow range of circumstances" exception, plaintiffs point to no evidence that could establish that this single prior instance made it "highly predictable" or "plainly obvious" that Mr. Smith would act on his untold fantasy of a (statutorily prohibited) relationship by inappropriately touching S.R. during school hours. Moreover, plaintiffs have not alleged facts sufficient to show that Director Taylor or Tri-County had notice of a widespread training deficiency regarding employee-on-student sexual harassment. That a particular employee—such as Mr. Smith—may be unsatisfactorily trained will not alone suffice to fasten § 1983 liability to a municipality, for the employee's shortcomings may have resulted from factors other than a faulty training program. *See* Canton, 489 U.S. at 390-91.[12]

Consequently, plaintiffs' conclusion that Tri-County's deliberate indifference is established through Director Taylor's deposition testimony—which indisputably demonstrates a general lack of understanding regarding her responsibilities as a mandatory reporter and Tri-County's Title IX Coordinator—is insufficient, by itself,

---

[12] Mr. Smith notably testified in his deposition that, at Director Taylor's behest following the Fowlers' sexual harassment complaint, he underwent post-incident training on the proper way to load students into car seats. *See* [Doc. 73-3 at 15 (57:9-19), 16-17 (58:19-59:14)]. Plaintiffs have not come forward with evidence pertaining to the adequacy of instruction Mr. Smith received during this post-incident training.

13

to show Tri-County acted with deliberate indifference in failing to train school personnel on how to identify and address signs of child abuse. For these reasons, plaintiffs' failure to train theory of § 1983 liability fails as a matter of law.

## B. ALLEGED CONSTITUTIONAL VIOLATIONS

Even if plaintiffs could establish a theory of § 1983 liability, they fail to demonstrate any underlying constitutional violations to support their municipal liability claim against Tri-County.

### 1. Deprivation of Equal Protection Rights

In their response brief, plaintiffs fail to rejoin Tri-County's request for summary judgment on the alleged equal protection violation. When a nonmoving party does not respond to a motion for summary judgment, in whole or in part, the nonmoving party "waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported.. . . But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment." Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002).

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause confers a federal constitutional right to be free from sex discrimination." Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 273 (1979). Sex discrimination is understood ordinarily to include sexual harassment. Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1249 (10th Cir. 1999). "A

14

school district's liability for sexual harassment under the Equal Protection Clause is analyzed under a municipal liability framework." Rost ex rel. v. K.C. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114, 1124-25 (10th Cir. 2008) (*citing* Murrell, 186 F.3d at 1249-50). Therefore, "[a] claim of municipal liability for sexual harassment requires that the state employee's discriminatory conduct be representative of an official policy or custom of the institution or [be] taken by an official with final policymaking authority." Id. at 1125.

Plaintiffs' complaint contains no allegations that Tri-County engaged in an official policy of deliberate indifference to sexual harassment. *See* id. ("In the absence of an official policy, a municipality may still be liable for the widespread and persistent practice of sexual harassment which constitutes a custom."). Rather, plaintiffs allege an unconstitutional custom of failing to investigate misconduct, discounting the credibility of students' and parents' allegations, and failing to enact policies that require an adherence to reporting requirements. [Doc. 2, ¶ 53]. They specifically contend that Tri-County's failure to investigate and report the Fowlers' "eye-witness allegations of sexual misconduct regarding Smith" evidences this custom. [*Id*., ¶ 54]. When presented with equal protection claims premised upon the "custom of failure to receive, investigate, or act on complaints of constitutional violations . . . a plaintiff must prove (1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference or tacit authorization of the conduct by policy-making officials after notice of the conduct; and (3) a resulting injury to the plaintiff." Id. (citations omitted).

15

Plaintiffs cannot prevail on their equal protection claim for the same reasons they cannot prevail on their theories of § 1983 liability. Although they allege that Director Taylor mishandled the Fowlers' complaint, plaintiffs identify no additional instances that could establish a widespread or persistent pattern of misconduct. *See* Waller, 932 F.3d at 1287 ("One prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations."). Thus, the record before the court does not support a claim that Tri-County violated S.R.'s equal protection rights.

### 2. Deprivation of Substantive Due Process Rights

Plaintiffs further contend the evidence shows that Tri-County, through the actions of Director Taylor and Mr. Smith, created a dangerous environment for S.R. in violation of her substantiative due process rights. [Doc. 73 at 23]. In the context of substantive due process claims, the Tenth Circuit has held that state officials can be liable for the acts of third parties where those officials "created the danger" that caused the harm alleged. Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995), *cert. denied*, 516 U.S. 1118 (1996). To successfully invoke the danger-creation exception, plaintiffs must establish as a threshold matter (1) private violence, and (2) affirmative conduct on the part of Tri-County in placing S.R. in danger. *See* Hernandez v. Ridley, 734 F.3d 1254, 1258 (10th Cir. 2013) (*citing* Gray v. Univ. of Colo. Hosp. Auth., 672 F.3d 909, 920 (10th Cir. 2012)). If these preconditions are met, plaintiffs must then satisfy all elements of a six-part test:

> (1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was

16

a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscience.

Ruiz v. McDonnell, 299 F.3d 1173, 1182-83 (10th Cir. 2002).

In their response opposing summary judgment on this matter, plaintiffs conclusively assert that because "the conduct in this case is plainly conscious shocking," their substantive due process claim should be submitted to a jury. [Doc. 73 at 23]. However, whether specific conduct shocks the conscience is a question of law for the court. Perez v. Unified Gov't of Wyandotte Cty./Kansas City, Kan., 432 F.3d 1163, 1168 & n.4 (10th Cir. 2005); Uhlrig, 64 F.3d at 573 (explaining that the standard for judging a substantive due process claim is whether the challenged government action would shock the conscience of federal judges). When considering whether conduct is conscience shocking, courts should "bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." Uhlrig, 64 F.3d at 573.

Considering plaintiffs' allegations as true and drawing all reasonable inferences in their favor, this court finds that the challenged conduct is not conscience shocking in a constitutional sense. As pled, plaintiffs fail to allege conduct of the "high level of outrageousness" required by binding precedent. See Moore v. Guthrie, 438 F.3d 1036, 1041 (10th Cir. 2006) ("[T]he Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort and that

17

merely allowing unreasonable risks to persist in the workplace is not necessarily conscience shocking.") (*citing* Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992)); *cf*. Uhlrig, 64 F.3d at 573 (mental health administrators' decision to place a criminally insane patient—who then murdered an employee—in a less-secure ward did not shock the conscience); Martinez v. Chama Valley Indep. Sch. Dist., No. 19, 77 F.3d 1253, 1254-55 (10th Cir. 1996) (requiring "a brutal and inhuman abuse of official power literally shocking to the conscience. . .with indifference or with deliberate intent to cause psychological harm."). The record before the court does not support a claim that Tri-County violated S.R.'s substantive due process rights. Without demonstrating an underlying constitutional violation, plaintiffs cannot make out a claim for municipal liability. Tri-County is therefore entitled to summary judgment on Count I of plaintiffs' complaint.

## IV.  COUNT II | ALLEGED TITLE IX VIOLATIONS

In support of their hostile educational environment claim, plaintiffs assert that Tri-County violated Title IX by responding with deliberate indifference to Mr. Smith's misconduct prior to his alleged abuse of S.R., and by responding with deliberate indifference to the abuse of S.R. itself. [Doc. 2, ¶¶ 72-98]. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). Like § 1983 plaintiffs, Title IX plaintiffs cannot impose liability on a school district based on vicarious liability or agency theories. Davis v. Monroe Cty. Bd. of Educ., 526 U.S.

629, 640 (1999) ("[A] recipient of federal funds may be liable in damages under Title IX only for its own misconduct."); <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274, 285 (1998) ("[I]t would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior*[.]") (citation omitted). Instead, Title IX imposes liability when "the institution itself, rather than its employees (or students), [is] the wrongdoer." <u>Simpson v. Univ. of Colo. Boulder</u>, 500 F.3d 1170, 1177 (10th Cir. 2007).

The Tenth Circuit has articulated a four-part test to establish a Title IX violation by a school district: (1) the school district had actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive, and objectively offensive, as to (4) deprive access to the educational benefits or opportunities provided by the school. <u>Rost</u>, 511 F.3d at 1119 (*citing* <u>Murrell</u>, 186 F.3d at 1256). A school is liable when it remains "deliberately indifferent to acts of . . . harassment of which it had actual knowledge." <u>Davis</u>, 526 U.S. at 642. This form of liability is limited "to circumstances where[ ] the recipient [of federal funds] exercises substantial control over both the harasser and the context in which the known harassment occurs." <u>Id</u>. at 645.

In its summary judgment motion, Tri-County contends it is not liable under Title IX because plaintiffs have not "sufficiently alleged that: (1) they were subjected to *quid pro quo* sexual harassment or subjected to a sexually hostile environment; (2) they brought the situation to the attention of an official at the educational institution receiving Title IX funds who had the 'authority to take corrective action' to remedy

the situation; and (3) that the institution's response to the harassment amounted to 'deliberate difference.'" [Doc. 68 at 7 (*quoting* <u>Morse v. Regents of Univ. of Colo.</u>, 154 F.3d 1124, 1127 (10th Cir. 1998))].[13] To the extent Tri-County's opening brief considers the requisite elements of plaintiffs' Title IX claim, the court finds that genuine disputes of material fact exist.[14] These issues include, but are not necessarily limited to: whether S.R. was subject to sexual harassment; whether Tri-County possessed actual knowledge of the Fowlers' complaint against Mr. Smith prior to his alleged abuse of S.R.; whether Tri-County adequately documented and responded to the Fowlers' complaint prior to Mr. Smith's alleged abuse of S.R.; whether Tri-County provided adequate, if any, sexual harassment training to employees and designated Title IX officers during the relevant period; whether, prior to the events giving rise to this action, Tri-County adopted any policies or practices prohibiting sexual harassment of students; and whether Tri-County sufficiently supervised employees to ensure effective detection and prevention of sexual harassment within the co-op program. Summary judgment is inappropriate under these circumstances, and plaintiffs' Title IX claim shall be submitted to the trier of fact for trial.

---

[13] The court notes that the pleading standard upon which Tri-County relies (i) applies at the dismissal stage rather than the summary judgment stage of litigation, and (ii) does not sufficiently set forth the elements required for plaintiffs to prevail on their hostile educational environment claim.

[14] While Tri-County does consider the requisite elements of plaintiffs' Title IX claim in its reply, *see* [Doc. 79 at 5-8], the court will not consider arguments and authorities first raised in a reply brief. *See e.g.,* <u>McWilliams v. DiNapoli</u>, No. CIV-19-212-SPS, 2021 WL 3710728 at *6 (E.D. Okla. Aug. 20, 2021) ("We have held that a failure to raise an issue in an opening brief waives that issue, and that we will not entertain issues raised for the first time in an appellant's reply brief.") (*quoting* <u>Platt v. Winnebago Indus., Inc.</u>, 960 F.3d 1264, 1271 (10th Cir. 2020)); <u>Allen v. Comm'r of SSA</u>, No. CIV-20-42-JFH-KEW (E.D. Okla. Mar. 1, 2021) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in [an] opening brief.") (*quoting* <u>Bronson v. Swensen</u>, 500 F.3d 1099, 1104 (10th Cir. 2007)).

## V.   COUNT III | ALLEGED STATE LAW VIOLATIONS

Plaintiffs' negligence per se claim is based on Tri-County's alleged failure to report child abuse to DHS in violation of the Oklahoma Reporting Act, *Okla. Stat.* tit. 10A, § 1-2-101 *et seq.* [Doc. 2, ¶¶ 99-106]. As a threshold matter, Tri-County asserts it is entitled to summary judgment for three reasons. First, Tri-County contends that plaintiffs' failure to respond to its respective summary judgment arguments should be treated as a waiver of any arguments opposing judgment on plaintiffs' negligence claim. [Doc. 79 at 2, n.2]. In the context of a complete failure to respond to a summary judgment motion, the Oklahoma Court of Civil Appeals has stated:

> The granting of summary judgment ultimately depends upon a determination by the trial court of whether there is a substantial controversy as to any material fact. *Even when no counter statement has been filed, it is still incumbent upon the trial court to insure that the motion is meritoriou*s. The trial court must examine the evidentiary materials supporting the motion and if all the material facts are addressed and are supported by admissible evidence, those facts are admitted and judgment for the movant is proper. However, if the movant has not addressed all material facts, or if one or more such facts is not supported by admissible evidence, judgment for the movant is not proper.

Spirgis v. Circle K Stores, Inc., 743 P.2d 682, 685 (Okla. Civ. App. 1987) (emphasis added); *accord* Reed, 312 F.3d at 1195. Under federal and state law, this court cannot grant summary judgment simply because plaintiffs failed to respond to Tri-County's request for summary judgment on their negligence per se claim. Instead, this court must examine whether the materials offered substantiate granting judgment in favor of Tri-County.

Second, Tri-County contends that no private right of action exists under the Oklahoma Reporting Act. [Doc. 68 at 15 (*citing* Paulson v. Sternlof, 15 P.3d 981, 984

21

(Okla. Civ. App. 2000))]. Negligence per se is, of course, based on the violation of a duty imposed by statute.

> If ... there are criminal or regulatory statutes which delineate the defendants conduct, courts may adopt the conduct required by the statutes as that which would be expected of a reasonably prudent person–providing courts believe the statutorily required conduct is appropriate for establishing civil liability. When courts adopt the statutory standard for a cause of action for negligence, the violation of the statute is said to be negligence per se. The violation of a statute constitutes negligence per se if the other elements of negligence are present.

Busby v. Quail Creek Golf & Country Club, 885 P.2d 1326, 1329 (Okla. 1994). Tri-County is correct that the Oklahoma Court of Civil Appeals has held—without further explanation—that "the child abuse reporting statutes do not create a private right of action" and thus "[t]here is no provision . . . for civil liability." Paulson, 15 P.3d at 984. However, "a claim for negligence per se does not necessarily depend on a legislature's grant of a private right of action." Christensen v. Moore Pub. Sch., I-02, No. CIV-06-858-C, 2008 WL 11417305 at *7 (W.D. Okla. Apr. 23, 2008) (citing 57A Am. Jur. 2d Negligence § 685). Because § 1-2-101 imposes more than a general duty and specifically requires anyone with reason to believe that a child is a victim of abuse to contact proper authorities, an alleged violation of the Oklahoma Reporting Act can support a claim for negligence per se. See id.

Finally, Tri-County argues that "[b]ecause a teacher is not a person 'responsible for the child's health'" under § 1-2-101, "alleged inappropriate acts by a teacher does not trigger an obligation to report to the [DHS]." [Doc. 68 at 15 (citing Nation v. Piedmont Indep. Sch. Dist. No. 22, No. CIV-18-1090-R, 2019 WL 4452953 at *4 (W.D. Okla. Sep. 17, 2019))]. The contention that Tri-County and its employees

22

are not within the purview of § 1-2-101's reporting requirements is at odds with the clear statutory language. Section 1-2-101(B)(1) requires that "[*e*]*very person* having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect" report "the matter immediately to the [DHS]." (emphasis added). Section 1-2-101(B)(2)(a) specifically places this obligation on "[*e*]*very school employee*" in Oklahoma and requires them to "report the matter immediately to the [DHS] *and* local law enforcement." (emphasis added).

Turning to the requisite elements of a claim for negligence per se, plaintiffs may survive summary judgment if the following can be established: (1) the injury complained of was caused by violation of statute or ordinance; (2) the injury was of the type intended to be prevented by the statute or ordinance; and (3) the injured party was one of the class meant to be protected by the statute or ordinance. Hampton v. Hammons, 743 P.2d 1053, 1056 (Okla. 1987). As to the latter two elements, S.R. falls within the class meant to be protected by § 1-2-101 as she is indisputably "a child under the age of eighteen (18) years," and the alleged injury suffered by S.R.—*i.e.*, sexual abuse by a school employee—is the type of injury intended to be prevented by the Oklahoma Reporting Act. With regard to the causation element, "as with any other negligence claim, civil damages for failing to report complaints of child sexual abuse will only arise when it proximately causes injury to another." Jane Doe No. 2 v. Oologah-Talala Indep. Sch. Dist. No. 4 of Rogers Cty., Okla., No. CIV-21-240-TCK-SH, 2022 WL 16557607 at *13 (N.D. Okla. Oct. 31, 2022) (citation omitted).

In their complaint, plaintiffs allege that Tri-County "failed to report Smith to the DHS" and this failure to report "was the direct and proximate cause of the abuse of S.R." [Doc. 2, ¶¶ 105-06]. The court interprets the plain language under Count III of the complaint as plaintiffs alleging that their injuries were proximately caused by Director Taylor's failure to notify DHS of Mr. Smith's reported abuse of S.R. This is the only reasonable interpretation of the allegations giving rise to plaintiffs' negligence per se claim, as it is undisputed that (i) Director Taylor failed to report the Fowlers' complaint against Mr. Smith to *both* DHS *and* local law enforcement, and (ii) Director Taylor promptly reported Mr. Smith's alleged abuse of S.R. to local law enforcement *only*. Based on the existing record, no reasonable jury could conclude that Tri-County's failure to report Mr. Smith's abuse of S.R. to DHS proximately (and retroactively) caused S.R.'s alleged injuries. Tri-County is therefore entitled to summary judgment on Count III of plaintiffs' complaint.

## VI.  CONCLUSION

WHEREFORE, Tri-County's motion for summary judgment [Doc. 68] is hereby **GRANTED in part** and **DENIED in part**. Following entry of this Order, the status of the claims asserted against Tri-County are as follows:

1.    Count I alleging municipal liability in violation of the Fifth and Fourteenth Amendments pursuant to § 1983 is dismissed with prejudice against Tri-County.

2.    Count II alleging hostile educational environment in violation of Title IX remains pending against Tri-County.

3.    Count III alleging negligence per se for violation of *Okla. Stat.* tit. 10A, § 1-2-101 *et seq.* is dismissed with prejudice against Tri-County.

IT IS SO ORDERED on this 19th day of March, 2025.

_____

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE